**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **DELONTE TAYLOR**, <br><br> Defendant. | Case No. 1:19-cr-00219 (TNM) |

**MEMORANDUM ORDER**

Delonte Taylor is serving a 63-month sentence for unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by more than a year of imprisonment. He resides at USP Canaan in Waymart, Pennsylvania. Taylor, proceeding *pro se*, seeks compassionate release. He claims that his health conditions put him at a greater risk of serious illness if he contracts COVID-19. The Government opposes Taylor's release. Upon consideration of the parties' briefs, the relevant law, and the entire record of this case, the Court denies Taylor's motion for the reasons below.

**I.**

Police found Taylor with a loaded 9-millimeter semiautomatic handgun and corresponding ammunition after he had been previously convicted of a felony. *See* Presentence Investigation Report ("PSR") at 3, ECF No. 19. And the police found Taylor with this loaded weapon a mere six months after he had been released from prison for assault with a dangerous weapon. *See* Gov't Mem. in Aid of Sentencing at 6–7, ECF No. 21. Taylor pled guilty to one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 USC § 922(g)(1). *See* Plea Agreement at 1, ECF No. 15.

The Court sentenced Taylor to 63 months incarceration and three years of supervised release. *See* J. in a Criminal Case at 2, ECF No. 25. He is incarcerated at USP Caanan and has served a little over three years of his sentence, about 60% of his full term. *See* Gov't Opp'n to Def.'s Mot. for Compassionate Release (Gov't Opp'n) at 3–4, ECF No. 29.

Taylor filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). *See* Def.'s Mot. for Compassionate Release (Def.'s Mot.), ECF 28. Taylor argues that his hypertension, Post-traumatic Stress Disorder (PTSD), and other mental health conditions justify early release. *Id.* at 2. He argues that these health conditions pose "extraordinary" and "compelling" reasons for compassionate release because they make him more susceptible to COVID-19. *See id.* at 4–6. Taylor asks this Court to reduce his sentence to time served and represents that he can live with his sister in Maryland and work for his in-laws if released. *Id.* at 6.

Taylor submitted two administrative requests for compassionate release to his Warden. *See* Gov't Opp'n, Exs. D & F, ECF No. 29. The Warden denied these requests. *See id.*, Exs. E & G. Though Taylor listed his hypertension in his requests for release, he did not mention his PTSD or other mental health challenges. *See id.*, Exs. D & F.

## II.

A defendant seeking compassionate release "has the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)(i)." *United States v. Holroyd*, 464 F. Supp. 3d 14, 17 (D.D.C. 2020). Sentence reduction is appropriate only if the defendant has first exhausted available administrative remedies. 18 U.S.C. § 3582(c)(1)(A). If he has exhausted all administrative remedies, a court may reduce a term of imprisonment if it finds that extraordinary

and compelling circumstances are present.  *See United States v. Dempsey*, 567 F. Supp. 3d 284, 287 (D.D.C. 2021).

Historically, courts could grant a compassionate release motion only if they found that "extraordinary and compelling reasons warrant the reduction" *and* that "the defendant is not a danger to the safety of any other persons of the community."  *Id.* at 287 (quoting U.S.S.G. § 1B1.13(1)(A), (2)).  The D.C. Circuit modified the standard that applied to defendant-filed compassionate release motions in *United States v. Long*, 997 F.3d 342 (D.C. Cir. 2021).  It agreed with a majority of other circuits that "U.S.S.G. § 1B1.13 is not 'applicable' to defendant-filed motions for compassionate release under the First Step Act."  *Id.* at 355 (collecting cases); *see also id.* ("In short, if a compassionate release motion is not brought by the Director of the Bureau of Prisons, U.S.S.G. § 1B1.13, by its own terms, is not applicable.").  In other words, no longer is the "dangerousness factor a rigid precondition to release."  *Id.* at 357.

But "courts still must consider and weigh the factors laid out in Section 3553(a), which include the need 'to protect the public from further crimes of the defendant' and to ensure 'adequate deterrence to criminal conduct.'"  *Id.* at 356 (quoting 18 U.S.C. § 3553(a)(2)(B) & (C)).  "So even without the policy statement, courts will still consider the anticipated effect of compassionate release on crime and public safety for defendant-filed motions as part of their weighing of relevant considerations."  *Id.* at 356–57.

The D.C. Circuit recently supplemented this reasoning in *United States v. Jenkins*, 50 F.4th 1185 (D.C. Cir. 2022).  The Circuit held that district courts, in considering motions for compassionate release, "may nonetheless rely on section 1B1.13 and its commentary as persuasive authority" even though "section 1B1.13 does not govern motions for compassionate release filed by the inmate himself."  *Id.* at 1192.

After *Long*, the Court considers the 18 U.S.C. § 3553(a) factors to determine whether "extraordinary and compelling reasons warrant" a reduction of Taylor's sentence.  18 U.S.C. § 3582(c)(1)(A)(i).  And after *Jenkins*, it may also consider section 1B1.13 and its commentary as "persuasive authority," but it need not do so.  *See Jenkins*, 50 F.4th at 1195–96.

The Court is also mindful of Taylor's *pro se* status in its review of his pleadings.  *Cf. Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But Taylor must still show that "extraordinary and compelling reasons" warrant a sentence reduction.  18 U.S.C. § 3582(c)(1)(A)(i).

### III.

Taylor argues that the COVID-19 pandemic presents an extraordinary and compelling reason for release given his medical conditions, and that he would not be a danger to the community upon release.

### A.

The Government raises a threshold challenge to Taylor's motion:  he failed to fully exhaust his administrative remedies.  *See* Gov't Opp'n at 15.  The Government argues that Taylor alleged different factual bases in his requests for compassionate release to the Warden and his motion for compassionate release before the Court.  *See id.* at 15–16.

Recall that Taylor submitted two administrative requests for compassionate release to the Warden, pointing to hypertension as the primary reason for release in both.  *See id.*, Exs. D & F. In his first request, Taylor stated:  "This request is based on my medical condition and ailments related to COVID-19 which I believe warrant a compassionate release.  I am suffering from high blood pressure/severe hypertension."  *See id.*, Ex. D.  In his second request, Taylor wrote:  "My medical condition is the extraordinary and compelling reason for my sentence reduction . . . I have a good institutional record, good programming, I have a home plan, employment, and am

not a threat to the community." *See id.*, Ex. F.  In his motion for compassionate release, however, Taylor points to (1) hypertension, (2) PTSD, and (3) other mental illness as his "extraordinary and compelling" reasons for release.  *Id.* at 5–6.

Taylor cannot seek compassionate release in this Court for his PTSD and mental health challenges without first raising those issues with his Warden.  *See* 18 U.S.C. § 3582(c); *see also United States v. Douglas*, No. 10-cr-171-4, 2020 WL 5816244, at *2 (D.D.C. Sept. 30, 2020) (cleaned up) (explaining that an inmate must "present the same factual basis for the compassionate-release request to the warden" as in his motion).  Taylor discusses his PTSD and mental health conditions for the first time in his motion for compassionate release.  Thus, while he has exhausted the administrative remedies available for his hypertension claim, *see* Gov't Opp'n at 17 (conceding this point), he fails to meet his burden under 18 U.S.C. § 3582(c)(1)(A) as to his PTSD and mental health claims.  Taylor has impermissibly set forth "one reason to BOP and another to the Court."  *United States v. Morales*, No. 06-cr-248-4, 2021 WL 4622461, at *2 (D.D.C. Oct. 7, 2021).  So this Court could deny his motion at least in part for failure to exhaust alone.

## B.

Nonetheless, the Court considers the merits of Taylor's claim.  Taylor asserts that he is more susceptible to COVID-19 because he has hypertension and alleges that he suffers from PTSD and other mental health challenges.

The Government does not dispute that Taylor suffers from hypertension, *see* Gov't Opp'n at 19–20, and his BOP records confirm it, *see id.*, Ex. A (Sealed), ECF No. 31.  But the Government argues that because the "BOP has made extensive changes to its operations" in response to COVID-19, Taylor's condition does not rise to the level of extraordinary and

compelling circumstances warranting early release. *See* Gov't Opp'n at 11, 20. More, Taylor is fully vaccinated after receiving two doses of the Pfizer-BioNTech vaccine in early 2021 and a booster dose about a year later. *See id.*, Ex. A (Sealed).

As the D.C. Circuit recently explained, "a pandemic affecting not only the entire prison population, but the entire world, does not constitute an extraordinary and compelling reason" sufficient to grant compassionate release. *United States v. Jackson*, 26 F.4th 994, 1002 (D.C. Cir. 2022). The Court finds that neither the coronavirus itself nor Taylor's health conditions warrant a sentence reduction for two reasons.

*First*, hypertension is a common ailment and Taylor takes medication to manage it. While the Centers for Disease Control and Prevention (CDC) recognizes that individuals with hypertension might get severely ill from COVID-19, hypertension is extremely common.[1] About half of the nation's adult population suffers from it.[2] Taylor is thus one among many who may be more susceptible to COVID-19. And Taylor receives prescription treatment for hypertension. *See* Gov't Opp'n at 20 (citing Exs. A & B (Sealed)). This treatment has managed his condition—Taylor's recent blood pressure readings are close to the normal range. *See* Gov't Opp'n at 20 (citing Ex. B (Sealed)).

To be sure, some courts have granted compassionate release based on a defendant's hypertension. But in these cases, defendants suffered from more extreme symptoms than Taylor and prison officials were not managing their conditions. For example, in *United States v.*

---

[1] *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 7, 2022); *Facts about Hypertension*, CDC, https://www.cdc.gov/bloodpressure/facts.htm (last visited Nov. 7, 2022).

[2] *See id.*

*Douglas*, the defendant "regularly registered blood pressure levels well in excess of the threshold for Stage 2 hypertension," reported symptoms such as "headaches, dizziness, and tightness in his chest," and had multiple blood pressure readings that qualified as "hypertensive crisis."  No. 10-cr-171-4, 2021 WL 214563, at *5 (D.D.C. Jan. 21, 2021).  Taylor does not show any similarly extreme symptoms, nor do his blood pressure readings reach the level of the defendant's in *Douglas*.  *See also id.* at *6 (collecting cases denying relief to "individuals with controlled or benign hypertension").  Taylor's hypertension alone is not enough to grant release, particularly when prescribed medication has returned his blood pressure to normal levels.  *See* Gov't Opp'n, Ex. B (Sealed).

      *Second*, Taylor is fully vaccinated, which decreases his vulnerability to a severe reaction to COVID-19.  *See id.*, Ex. A (Sealed).  As the Government explains, the COVID-19 vaccine is effective in preventing serious illness, even given virus variants.  *See id.* at 4–10.[3]  Taylor's vaccination status lessens his risk of serious illness from COVID-19.  It therefore cuts against his argument that his hypertension is an extraordinary and compelling circumstances meriting early release.

      Taylor also argues that prison officials are not adequately treating his PTSD and other, unnamed, mental health conditions.  *See* Def.'s Mot. at 5–6.  More, he claims that the prison is not providing the "help and treatment he is entitled" in terms of "educational skills."  *Id.*  As the Government notes, the proper way for Taylor to raise such claims is in a civil suit over the conditions of his confinement, not in his criminal case.  *See, e.g.*, *Chandler v. BOP*, 229 F. Supp.

---

[3]  *See also Benefits of Getting A COVID-19 Vaccine*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last visited Nov. 7, 2022) ("COVID-19 vaccines available in the United States are safe and are effective at protecting people from getting seriously ill, being hospitalized, and even dying.").

3d 40, 43 (D.D.C. 2017) (civil suit brought by prisoner for failure to provide mental health treatment).  The First Step Act did not alter that normal recourse.

Even if Taylor seeks to argue that his PTSD and unnamed other mental health conditions make him more susceptible to COVID-19 and support early release, that argument fails too. True, the CDC has explained that mental health conditions "can make you more likely to get very sick from COVID-19," including "mood disorders, . . . depression, and schizophrenia spectrum disorders."[4]  But Taylor's medical records reveal that he does not have any diagnosed medical conditions.  *See* Gov't Mem. at 20 (citing Ex. B (Sealed)).  Taylor therefore fails to show a qualifying medical risk factor that would support heightened susceptibility to COVID-19.

## C.

"Even if [Taylor] had presented 'extraordinary and compelling reasons' for release, the Court may reduce his term of imprisonment only if the balance of the § 3553(a) factors favor his release." *Dempsey*, 567 F. Supp. 3d at 290; *see also* 18 U.S.C. § 3582(c)(1)(A) ("[T]he court . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable[.]").  The balance of the factors does not favor Taylor's release.

Taylor argues that the § 3553(a) factors weigh in his favor.  Among those factors are "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence to "reflect the seriousness of the offense" and "to protect the public from further crimes."  18 U.S.C. § 3553(a)(1)–(2).

---

[4]  *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 7, 2022).

The nature and circumstances of the offense are such that Taylor should not be granted release because his offense involved a dangerous firearm. Firearms offenses are serious crimes. Taylor possessed a loaded 9-millimeter semiautomatic pistol and an extended magazine around other people—including children. *See* PSR at 4; *see also* Gov't Opp'n at 24. More, Taylor was potentially under the influence of alcohol while possessing this firearm. PSR at 4. And Taylor possessed this firearm after pleading guilty to a violent felony conviction. *Id*. at 11–12. Because Taylor's actions were inherently dangerous, the nature and circumstances of his offense weigh against release.

Taylor's history and characteristics do not help him either. The Court must view his motion against the backdrop of his criminal history. Taylor had eight adult convictions when he committed the offense for which he is incarcerated. *See* Gov't Mem at 4–6; Gov't Opp'n at 24. Of these convictions, Taylor's conviction for assault with a dangerous weapon is most concerning. *See* Gov't Mem. at 6. In that case, Taylor struck the victim in the face and head with a gun several times. *See* PSR at 11–12. Taylor's prior convictions reinforce the Court's concern about his dangerousness. *Cf. Holroyd*, 464 F. Supp. 3d at 19 ("If a defendant still poses a danger to the community or if the balance of factors under § 3553(a) favor continued imprisonment, these are independent reasons to deny a motion for compassionate release.").

Furthermore, those engaged in firearm-related crimes are historically inclined to recidivate. *See also* U.S. Sent'g Comm'n, *Recidivism Among Federal Firearms Offenders* at 4 (June 2019) ("Firearms offenders generally recidivated at a higher rate, recidivated more quickly following release into the community, and continued to recidivate later in life than non-firearms offenders."). Taylor's history and characteristics thus weigh against release given his extensive background of criminal convictions and high probability of recidivism.

Though Taylor argues that his "disciplinary record [in jail] is minimal" and that he "has only obtained one disciplinary incident," Def.'s Mot. at 6, the Court is unconvinced.[5]  Records reveal that the jail disciplined Taylor for possessing a hazardous tool—a 4.5-inch metal shank. *See* Gov't Opp'n at 25 (citing Ex. I (Sealed)).  The disciplinary record explains that there are "no known legitimate purposes for inmates to possess items of this nature" and that "similar pieces of metal [have] been used to manufacture weapons or other instruments of bodily harm."  *Id.*  The Court believes that Taylor has downplayed the seriousness of this incident and finds that it cuts against his argument for early release.

To be sure, Taylor asserts that he anticipates having a place to live and employment upon release.  *See* Def.'s Mot. at 6.  The Government argues that despite this information, Taylor has failed to include a concrete and detailed release plan.  *See* Gov't Opp'n at 27.  While the Court commends Taylor for noting that he has potential residence and employment with family, the Court does not find that this information tips the balance of the § 3553 (a) factors in his favor.

In short, the Court agrees with the Government that "reducing defendant's already lenient sentence to time-served would not reflect the seriousness of his offense or deter him from engaging in further criminal conduct."  Gov't Opp'n at 26–27.  Even if he had presented extraordinary and compelling reasons for release—which he has not—the § 3553(a) factors would require denial of Taylor's release request.

---

[5]  Taylor asserts this argument as an "extraordinary and compelling reason" for release rather than a consideration under the § 3553(a) factors.  *See* Def.'s Mot. at 6.  But the Court thinks it is most properly analyzed under the § 3553(a) factors.

**IV.**

For these reasons, it is hereby

**ORDERED** that Defendant's Motion for Compassionate Release is DENIED.


Dated:  November 8, 2022

_____
TREVOR N. McFADDEN, U.S.D.J.